# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| J & J Fernandez Ventures, L.P., a California Limited Partnership, and JMJV Management Corporation as General Partner and as Tax Matters Partner, | § | |
| Plaintiffs, | § | Case No. 06-27T<br>Judge Lawrence M. Baskir |
| v. | § | |
| United States of America, | § | |
| Defendant. | § | |

## JOINT PRELIMINARY STATUS REPORT

Pursuant to the Rules of the United States Court of Federal Claims ("RCFC"), Appendix A, paragraph 4 and the Honorable Judge Baskir's Special Procedure Order filed on March 16, 2006, the parties file this Joint Preliminary Status Report.

**(a) Jurisdiction**

On October 13, 2006, the Internal Revenue Service ("IRS") issued a Notice of Final Partnership Administrative Adjustment for the taxable years ended December 31, 2001, December 31, 2002 and December 31, 2003 (the "2001-2003 FPAA") to the Tax Matters Partner of J & J Fernandez Ventures, L.P. Plaintiffs assert that the

Court has jurisdiction for readjustment of the J & J Fernandez Ventures, L.P. (the "Partnership") partnership items and the applicability of I.R.C. § 6662[1] penalties for the taxable years 2001, 2002 and 2003.

The United States asserts that the Court does not have jurisdiction to review the 2001-2003 FPAAs because Plaintiffs have not satisfied the deposit requirement in 26 U.S.C. § 6226(e). In particular, the United States asserts that Joseph and Joan Fernandez have under-deposited the income tax attributable to the 2001-2003 FPAAs by $1,510,332. On May 1, 2006, Plaintiffs received from the United States a detailed calculation of this shortfall and the United States' request of additional tax deposit. Plaintiffs are currently in the process of reviewing the calculation with their counsel and will make the additional tax deposit if necessary. If and when Plaintiffs make the additional deposit, the United States agrees that the Court will have jurisdiction the review the 2001-2003 FPAAs. Plaintiffs believe that pursuant to I.R.C. §§ 6221 and 6230(d)(4) this Court does not have jurisdiction over partner level defenses to penalties.

**(b) Case Consolidation**

[1] Sections hereinafter referred to are under Title 26 of the United States Code, also known as the Internal Revenue Code ("I.R.C.").

The parties ask that the Court consolidate this case for all purposes with *J & J Fernandez Ventures, L.P. v. United States*, case no. 05-26T (Compl. filed Jan. 7, 2005), currently pending before this Court, because of the overlapping factual and legal issues involved in both cases. (See discussion in section (h)). An Unopposed Motion to Consolidate was filed by Plaintiffs on April 28, 2006. *See* Plaintiffs' Unopposed Motion to Consolidate and Incorporate Memorandum of Law (Docket Entry # 12).

If this case is consolidated with case no. 05-26T, the parties request that the Court designate the consolidated case for electronic case filing.

**(c) Liability and Damages**

Although not technically damages, Plaintiffs and other partners of the Partnership have deposited a total of $4,863,128.00 with the IRS. Plaintiffs assert that this deposit represents the amount of tax due from the partners, should the 2001-2003 FPAA be upheld. The United States asserts that Joseph and Joan Fernandez have under-deposited the income tax attributable to the 2001-2003 FPAAs by $1,510,332.00. Plaintiffs are currently consulting with their counsel in determining whether additional tax deposit is necessary. In addition,

the IRS seeks to impose a 40% penalty pursuant to I.R.C. §§ 6662(e) & (h), or in the alternative, a 20% penalty pursuant to other provisions in I.R.C. § 6662.

**Bifurcation of Trial**

Separate trials on the questions of liability and of damages (i.e., the amount of any partnership adjustments or additions thereto) should be unnecessary in this case. The parties request, however, that the court determine questions of liability only and thereafter, if appropriate, permit the parties a reasonable amount of time within which to perform and to agree upon any necessary computations with a view to the parties submitting a stipulation to the Court. This will avoid unnecessary time at trial being devoted to the questions of computations.

**(d) Deferral of Proceeding**

If the Court does not order consolidation of this case with *J & J Fernandez Ventures, L.P.*, case no. 05-26T, the parties request that this case be deferred pending the disposition of *J & J Fernandez Ventures, L.P.*, case no. 05-26T. As explained further in section (h), the parties agree that the Court's disposition of the factual and legal issues in *J & J Fernandez Ventures, L.P.*, case no. 05-26T will impact

the outcome of this case. Therefore, in the interest of judicial economy, the parties request all further proceedings in this case either be consolidated with or deferred pending the Court's consideration of *J & J Fernandez Ventures, L.P.*, case no. 05-26T.

**(e) Remand and Suspension**

Not Applicable.

**(f) Joinder of Additional Parties**

At this time, neither party anticipates any additional parties to be joined; however, the individual partners in the Partnership may file a claim for refund and move for joinder or consolidation of the related lawsuit in the event the IRS issues a statutory notice of deficiency for the 2001, 2002 or 2003 taxable year non-partnership items.

**(g) RCRC 12(b), 12(c) or 56 Motion**

Plaintiffs and Defendant do not plan to file a RCFC 12(b), 12(c) or 56 Motion if the current case is consolidated with *J & J Fernandez Ventures, L.P.*, case no. 05-26T.

**(h) Factual and Legal Issues**

**Plaintiffs' Position**

This is a civil action arising under I.R.C. § 6226(a) for the redetermination of the 2001-2003 FPAA. In the 2001-2003 FPAA, the Commissioner adjusted the Partnership's capital gain on the sale of certain shares of Invitrogen, Inc. ("Invitrogen") stock sold during the 2001, 2002 and 2003 tax years, by adjusting the Partnership's basis in the Invitrogen stock to zero (-0-). The basis adjustment, in turn, depends on the proper tax treatment of certain Underlying Transaction (described below) that took place in the 1999 tax year. The proper basis determination and tax treatment of the 1999 Underlying Transaction are issues already presented before the Court in *J & J Fernandez Ventures, L.P.*, case no. 05-26T. Plaintiffs maintain, as they did in their Motion for Summary Judgment in *J & J Fernandez Ventures, L.P.*, case no. 05-26T, that the Invitrogen stock's basis determination and the proper tax treatment of the 1999 Underlying Transaction are 1999 partnership items that the IRS is barred from adjusting because the IRS failed to timely issue a Notice of Final Partnership Administrative Adjustment for the 1999 tax year. The issuance of the 2000 FPAA and the 2001-2003 FPAA adjusting the capital gain on the subsequent sale of Invitrogen stock is simply

an attempt by the IRS to circumvent the statute of limitations with respect to these 1999 partnership items.

1. Underlying Transaction

In December 1999, the Fernandez Family Trust (the "Family Trust") borrowed U.S. Treasury securities from a broker and sold the securities in the open market (the "Short-Sale"). The Family Trust contributed the short-sale proceeds and obligation, plus certain shares of Invitrogen, Inc. common stock to the Partnership in return for a limited partnership interest.

Also in December 1999, the Family Trust sold 25.5% of its limited partnership interest in the Partnership to each of the trusts created by Joe and Joan Fernandez (the "Descendants' Trust") in return for a promissory note of $15,693,783.00 from each trust. The Partnership closed the Short-Sale transaction by purchasing from the open market the securities needed to "cover" the Short-Sale obligation.

The Partnership filed two U.S. Partnership Returns of Income (Form 1065) in 1999 (collectively, the "1999 Returns"). A U.S. Partnership Return of Income was timely filed on or before April 17,

2000[2], for the short taxable year ending on December 16, 1999. A U.S. Partnership Return of Income was timely filed on April 17, 2000, for the short taxable year ending on December 31, 1999[3]. The 1999 Returns disclosed of the sale of the limited partnership interest from the Family Trust to the Descendants' Trust. A § 754 election was made in both returns. The Partnership reported the required basis adjustments for the partners in both returns.

The Partnership sold 550,341 shares of Invitrogen, Inc. common stock in 2000 for $37,713,657.00. The Partnership reported such transaction on its 2000 partnership income tax return, claiming a basis of $26,416,368.00 as a result of the transactions in 1999 and reporting a gain in the amount of $11,297,289.00.

The IRS issued a Notice of Final Partnership Administrative Adjustment for the taxable year ended December 31, 2000 (the "2000 FPAA") to the Partnership on October 12, 2004. In the 2000 FPAA, the Commissioner adjusted the partnership's basis in the Invitrogen, Inc. stock to zero (-0-), and therefore, increased the partnership's gain on the sale of Invitrogen, Inc. stock to $37,772,040.00. This

[2] April 15, 2000, fell on a Saturday.

[3] Please note that, while each of the two returns represents a separate partnership, collectively, the partnerships are referred to in the singular herein as "the Partnership" for the sake of simplicity.

determination is based on the IRS' further determinations relating to the Partnership's 1999 partnership items, to wit: 1) J & J failed to establish that the partnership's basis of stock under Section 1012 was more than zero; 2) J & J failed to establish that the partnership's carryover basis in the corporate stock under I.R.C. § 723 was more than zero at the time the corporate stock was contributed to the partnership; 3) J & J failed to establish that there was a sale or exchange that resulted in an adjustment to the basis of the Invitrogen stock under I.R.C. § 743 when the Descendants' Trusts acquired their respective 25.5% limited partnership interest in J & J; 4) J & J failed to establish that the adjusted basis of the partners in their respective partnership interest under I.R.C. §§ 722 and 742 were more than zero; 5) J & J failed to establish that the respective adjusted basis of the partners in the partnership under I.R.C. §§ 733(1) and 752(b) to reflect the reduction in their respective shares of partnership liabilities when the short sale obligations assumed by the partnership was covered; (6) alternatively, if the short sale obligations were not I.R.C. § 752 liabilities, J & J failed to reduce the adjusted basis of the contributing partner's interest under Treas. Reg. § 1.752-6T upon J & J's assumption of the short sale obligations; and (7) under Treas.

Reg. § 1.701-2, it is determined that the principal purpose of the purported contribution of the short sale position to the partnership was to reduce substantially the present value of the partner's aggregate federal tax liability in a manner that is inconsistent with the intent of Subchapter K of the Internal Revenue Code.

2. Plaintiffs Filed A Motion for Summary Judgment on the Statute Of Limitations Issue in *J & J Fernandez Ventures, L.P.*, case no. 05-26T.

In Plaintiffs' Motion for Summary Judgment filed in *J & J Fernandez Ventures, L.P.*, case no. 05-26T, Plaintiffs argue that by adjusting the Partnership's capital gain on the sale of the Invitrogen stock in the 2000 FPAA, the IRS makes a direct challenge to the underlying 1999 partnership items, which were fixed and final when the three-year statute of limitations on assessment of these 1999 partnership items expired in 2003. Further, Plaintiffs argue that the 2000 FPAA issued to the Second J & J Fernandez Ventures, L.P.[4] was invalid because it challenges 1999 partnership items that belong to the First J & J Fernandez Ventures, L.P.[5] Plaintiffs contend that

---

[4] The Second J & J Fernandez Ventures L.P. began on December 16, 1999. *See* Plaintiffs' Brief in Support of Motion for Summary Judgment at 29, *J & J Fernandez Ventures, L.P. v. United States*, No. 05-26T (Fed. Cl. Jan. 9, 2005).

[5] The First J & J Fernandez Ventures, L.P. began on December 9, 1999 and ended on December 16, 1999. *See* Plaintiffs' Brief in Support of Motion for Summary Judgment at 29, *J & J Fernandez Ventures, L.P. v. United States*, No. 05-26T.

because the statute of limitations has long since expired with respect to the 1999 partnership items—which include the basis of the Invitrogen stock and the Section 743(b) basis adjustments—the IRS cannot circumvent the statute of limitations by adjusting the Partnership's capital gain on the sale of Invitrogen stock in subsequent years.

3. <u>Subsequent Sale of Invitrogen Stock.</u>

In 2001, 2002 and 2003, the Partnership sold additional shares of Invitrogen stock. In calculating the amount of capital gain on the sale of the Invitrogen stock, the Partnership and the partners took into consideration the Partnership's basis in the Invitrogen stock and the Section 743(b) basis adjustment, both of which were determined in 1999.

In the 2001-2003 FPAA, the Commissioner adjusted the Partnership's capital gain on the sale of certain shares of Invitrogen stock sold during the 2001, 2002 and 2003 tax years, by adjusting the Partnership's basis in the Invitrogen stock to zero (-0-). Plaintiffs note that although the 2001-2003 FPAA does not specifically reference the 1999 Underlying Transactions, the capital gain adjustment contained in the 2001-2003 FPAA depends entirely on the

proper tax treatment of the 1999 Underlying Transactions. Essentially, the adjustment in the 2001-2003 FPAA is merely a computational matter pending the Court's resolution of the proper tax treatment of the Underlying Transaction.

4. The IRS Attempts to Circumvent the Statute of Limitations on the 1999 Partnership Items by Issuing FPAAs for Subsequent Years.

As argued in Plaintiffs' Motion for Summary Judgment in *J & J Fernandez Ventures, L.P.*, case no. 05-26T, the IRS attempts to circumvent the 1999 statute of limitations and collectively challenge various 1999 partnership items by issuing the 2000 FPAA to the Partnership. Likewise, the IRS's issuance of the 2001-2003 FPAA is another backdoor attempt to circumvent the 1999 statute of limitations on the 1999 partnership items by arguing that the basis of the Invitrogen stock is zero. These adjustments are barred by the statute of limitations and should not be upheld.

5. Tax Treatment of Transactions

Plaintiffs and other partners properly reported their income/loss from the Partnership and timely filed their respective tax returns for the taxable years 2001, 2002 and 2003. Various tax professionals opined that the Short-Sale obligation did not constitute a "liability" within the meaning of I.R.C. § 752. Therefore, when the Family Trust

contributed the Short-Sale proceeds and obligation and certain shares of Invitrogen, Inc. stock to the Partnership in 1999, the Family Trust's basis in the Partnership was not decreased by the amount of the Short-Sale obligation assumed by the Partnership. Plaintiffs also argue that Treasury Regulations §§1.752-6T and 1.752-6 are not applicable because they are invalid and illegal. Even if Treasury Regulations §§1.752-6T and 1.752-6 are valid, they may not be legally applied retroactively in this case.

Further, when the Family Trust sold over 50% of the limited partnership interest to the Descendants' Trusts in December 1999, it caused a technical termination under I.R.C. §708(b)(1)(B). As the result of the Partnership's 754 elections, the Partnership was required to adjust the basis of its interest in the Invitrogen, Inc. stock. The sale of limited partnership interests between the Family Trust and the Descendants' Trust was bona fide and real.

When the Partnership sold the Invitrogen, Inc. stock in 2001, 2002 and 2003, it properly calculated the gain from the sale of the Invitrogen, Inc. stock and properly allocated proportionately each partner's respective share of such income. Plaintiffs and other partners properly reported their income/loss from the Partnership and

timely filed their respective tax returns for the taxable years 2001, 2002 and 2003.

6. Penalties Should Not Apply

Penalties should not apply because the Partnership properly computed and reported the basis of the Invitrogen, Inc. stock in 2001, 2002 and 2003. Assuming arguendo that there was any misreporting of the amount of the basis adjustment, it occurred in 1999—the short taxable years which are barred and for which no FPAA has been issued. Further, there was substantial authority for the position taken on the relevant tax returns as evidenced by the promulgation of the retro-active regulation §1.752-6. Finally, there is no gross valuation discount within the meaning of I.R.C. §6662(e) and (h).

7. Disclaimer

The recitation of facts and issues described by Plaintiffs in this Status Report reflects a preliminary overview of the facts and issues in this case. Plaintiffs reserve the right to amend, change, clarify or correct the facts and issues described in this Status Report as the case progress.

**Defendant's Position**

The 2001-2003 FPAAs issued by the IRS are correct. The United States contends that the tax benefits that J & J Fernandez Ventures, L.P. seeks should not be allowed for a plethora of reasons and that the penalties proposed by the IRS should apply. The real parties in interest are the limited partners – Joseph M. and Joan V. Fernandez and their descendants' trusts. The United States asserts that the principal purpose for the formation of J & J Fernandez Ventures, L.P. was to reduce substantially the present value of the partners' aggregate federal tax liability in a manner that is inconsistent with the intent of Subchapter K of the Internal Revenue Code. The IRS disallowed the non-economic stock basis attributable to an abusive partnership transaction described in Notice 2000-44, 2000-2 C.B. 255—that is, a so-called "Son of BOSS" tax-shelter transaction— promoted by The Heritage Organization, LLC. Heritage designed, orchestrated, and documented inter-related steps in a series of transactions designed to create an artificial non-economic basis in shares of Invitrogen stock that were owned by Joseph Fernandez. The disallowance of the artificially created tax basis in the stock resulted in an additional gain to J & J Fernandez Ventures, L.P. of $28,920,000.00 from the sale of the Invitrogen shares during

2001-2003. The IRS also disallowed a deduction for legal expenses and proposed a 40% accuracy-related penalty. Since the United States was unable to review Plaintiffs' statement of factual and legal issues prior to the submission of this report, it reserves its right to supplement this statement in response to Plaintiffs' statement.

1. The Partnership's Claimed Basis in Invitrogen Shares Should be Disallowed.

In general, the United States contends that the tax basis in the Invitrogen Shares is $-0- and that the partners of J & J Fernandez Ventures, L.P. are not entitled to the step-up in their shares of the inside basis of partnership property under I.R.C. § 743 for the following reasons:

- Under I.R.C. § 752, the short sale obligation was a partnership liability. When the short sale position was covered, that liability disappeared, resulting in a decrease in the outside basis of the Fernandez Family Trust to $-0- under I.R.C. § 752(b);
- If the short sale obligation was not a partnership liability under I.R.C. § 752, the obligation was a non-section 752 liability under Treas. Reg. § 1.752-6T. As a result, the

outside basis of the Fernandez Family Trust was reduced to $-0- when the liability was assumed by J & J Fernandez Ventures, L.P.;

- A principal purpose of J & J Fernandez Ventures, L.P. or its transactions, was to substantially reduce one or more of its alleged partners' tax liabilities in a manner inconsistent with the intent of subchapter K of the Internal Revenue Code so that the anti-abuse provisions of Treas. Reg. § 1.701-2 allow the IRS to disregard the purported contribution of the short sale position, and accordingly, the Fernandez Family Trust should be treated as if it held the short sale position directly;
- J & J Fernandez Ventures, L.P. was not formed, and the short sale transactions at issue were not entered into, for a substantial business purpose;
- The Partnership and its transactions do not meet the requirement that the tax consequences to each partner of partnership operations and of transactions between the partner and the partnership must accurately reflect the partners' economic agreement and the partners' income.

- No technical termination of the Partnership occurred under I.R.C. § 708 due to the purported sale of the Descendants' Trusts.
- The Descendants' Trusts acquired a carryover basis of $ -0- as a result of a gift under I.R.C. § 1014, instead of a cost basis under I.R.C. § 1012. The transfer of the partnership interests to the Descendants' Trusts was not a sale or exchange for tax purposes because there was no bona fide intention to repay the promissory notes payable to the Fernandez Family Trust.
- Alternatively, even if a partner in the Partnership had an outside basis greater than $-0-, the inside basis of the Invitrogen shares was not stepped–up because the transfer of 51% of the interest in the partnership to the Descendants' Trusts was not a sale or exchange that triggered an optional basis adjustment under I.R.C. § 743.
- J & J Fernandez Ventures, L.P., its transactions, or its alleged partners lacked the necessary profit motive required by I.R.C. § 165(c);

- J & J Fernandez Ventures, L.P., or its transactions, should be disregarded for tax purposes because they were motivated for tax reasons, were shams, or lacked economic substance.
- Additionally, because this is a de novo review of the transactions entered into by J & J Fernandez Ventures, L.P. and its partners – not a determination based on positions previously taken by the IRS – the United States may also assert any other grounds as the facts and law may warrant to deny the benefits of this tax shelter transaction.

2. The Partnership's Deduction of Legal Fees Should be Disallowed.

J & J Fernandez Ventures, L.P.'s deduction of legal fees should be disallowed because the expenses were not paid in connection with a transaction entered into for profit as required by I.R.C. §§ 212 and 162.

3. The Penalties Imposed Should Apply.

- The imposition of the 40% accuracy-related penalty under I.R.C. § 6662(h) should be sustained because the

underpayment of tax was attributable to a gross valuation misstatement.

- If the 40% accuracy-related penalty under I.R.C. § 6662(h) is not sustained, the imposition of the 20% accuracy-related penalty under I.R.C. § 6662(a) should be sustained because (a) under I.R.C. § 6662(b), the underpayment was due to negligence and disregard of the rules and regulations; or (b) under I.R.C. § 6662(d), the underpayment was due to a substantial understatement of income tax that is not reduced under any exception provided for by I.R.C. § 6662(d)(2)(B). Additionally, the adjusted item is attributable to a tax shelter and the treatment of that item is not supported by substantial authority.
- Under I.R.C. § 6664(c), Joseph Fernandez and Joan Fernandez – in their respective capacities as officers and shareholders of JMJV Management Corporation, which was the tax matters partner of J & J Fernandez Ventures, L.P. – cannot show that they had reasonable cause and

acted in good faith as a defense to the imposition of an accuracy-related penalty under I.R.C. § 6662.

4. The Statute of Limitations Has Not Expired.

- I.R.C. § 6501 of the Internal Revenue Code contains the general assessment statute of limitation that governs this case's tax assessment. I.R.C. § 6229 of the Internal Revenue Code merely extends the general limitation contained in I.R.C. § 6501.
- I.R.C. §§ 6501 and 6229 do not prohibit this court from calculating J & J Fernandez's basis in the Invitrogen stock when J & J Fernandez sold that stock in 2001-2003..

**(i) Settlement / ADR**

The parties are open to settlement offers and/or alternative dispute resolution. It should be noted, however, that because of the amount of tax liability and importance of the issues raised by this case, any proposed settlement would have to be reviewed and approved at very high levels within both the Internal Revenue Service and the Department of Justice Tax Division. Counsel for the United States believes that this review process is likely to require six months after

any settlement proposal has been submitted by counsel for plaintiffs and recommended for approval by counsel for the United States.

**(j) Anticipation of Trial**

Absent the consolidation with or deferral of the current case pending the Court's disposition of, *J & J Fernandez Ventures, L.P.*, case no. 05-26T, the parties anticipate proceeding to trial. Neither party requests expedited trial. The parties agree on Dallas, Texas to be the place of trial.

**(k) Electronic Case Management**

The parties agree to produce documents to each other in usable electronic format. At present, the parties know of no special issues regarding electronic case management.

**(l) Other Information**

Not applicable.

**(m) Discovery Plan**

The parties anticipate that the Court will likely consolidate this case with *J & J Fernandez Ventures, L.P.*, case no. 05-26T, or in the alternative, defer all further proceeding pending the Court's

disposition of *J & J Fernandez Ventures, L.P.*, case no. 05-26T. Based on the assumption that the Court will grant Plaintiffs' Unopposed Motion to Consolidate, the parties agree on the following deadlines:

1. **Initial Disclosure under Rule 26**. The parties shall serve/supplement their RCFC 26 disclosure within 30 days of the Court's ordering of consolidation.

2. **Consolidated Statement of Uncontroverted Facts**. The parties shall jointly submit a Supplemental Consolidated Statement of Uncontroverted Facts within 45 days of the Court's ordering of consolidation.

3. **Rule 12(b) and Rule 56 Motions Regarding Subject Matter Jurisdiction and the Statute of Limitations**. The parties agree that the legal issues involved in both cases are identical and do not require additional briefing for purposes of Plaintiffs' Motion for Summary Judgment filed in *J & J Fernandez Ventures, L.P.*, case no. 05-26T, except that the parties shall supplement the RCFC 26 disclosure and the Consolidated Statement of Uncontroverted Facts to incorporate additional facts such

as the dates the Partnership and the partners' returns were filed and the amount of proceeds and bases reported on the sale of the Invitrogen stock in 2001, 2002 and 2003. Upon consolidation, the parties agree that the briefs and memoranda of law filed in *J & J Fernandez Ventures, L.P.*, case no. 05-26T, should be incorporated.

The parties shall postpone all discovery, until the Court rules on the Plaintiffs' Motion for Summary Judgment and the United States' Cross-Motion for Partial Summary Judgment in *J & J Fernandez Ventures, L.P.*, case no. 05-26T (the "Ruling Date").

If Plaintiffs' Motion for Summary Judgment in *J & J Fernandez Ventures, L.P.*, case no. 05-26T is denied, the parties agree to consolidate discovery in this case with discovery in *J & J Fernandez Ventures, L.P.*, case no. 05-26T.

4. **Plaintiffs' Preliminary Witness and Exhibit List**.

Plaintiffs shall serve a Preliminary Witness and Exhibit List within 30 days from the Ruling Date.

5. **Defendant's Preliminary Witness and Exhibit List**.

Defendant shall serve a Preliminary Witness and Exhibit List within 60 days from the Ruling Date.

6. **Plaintiffs' Expert Disclosure**. Plaintiffs shall serve an Expert Witness List, accompanied by a written report prepared and signed by the witness within 240 days from the Ruling Date.

7. **Defendant's Expert Disclosure**. Defendant shall serve an Expert Witness List, accompanied by a written report prepared and signed by the witness within 270 days from the Ruling Date.

8. **Deposition of Experts**. Any party who wishes to depose an expert shall conduct such deposition within 360 days from the Ruling Date.

9. **Motion to Exclude or Limit Expert Testimony**. Any party who wishes to limit or exclude expert testimony shall file any such objections no later than 390 days from the Ruling Date.

10. **Completion of discovery**. All discoveries shall be completed by the closing date that is 480 days from the Ruling Date.

**(n) Post-Discovery Deadlines**

Pursuant to RCFC, Appendix A, paragraph 13, all parties shall file and serve their Final Witness List and Final Exhibit List no later than 63 days before the pretrial conference.

**(o) Trial Date**

The parties request a trial date no later than 60 days following the completion of discovery. This trial is a bench trial. Plaintiffs expect the trial to last seven days. Defendant does not disagree with that assessment at this time.

**(p) Appendix to the Joint Preliminary Status Report**

1. I.R.C. §6221
2. I.R.C. §6226(e)
3. I.R.C. §6229
4. I.R.C. §6230(d)(4)
5. I.R.C. §6501

Respectfully submitted,

**FOR PLAINTIFFS**

/s/ M. Todd Welty__________
M. Todd Welty
Josh O. Ungerman

Meadows, Owens, Collier, Reed,
Cousins & Blau, L.L.P.
901 Main Street
Suite 3700
Dallas, TX 75202
(214) 744-3700 Telephone
(214) 747-3732 Facsimile
twelty@meadowsowens.com
jungerman@meadowsowens.com

May 4, 2006

**FOR DEFENDANT**

/s/ Grover Hartt_____________
GROVER HARTT, III
Attorney of Record
Tax Division
U.S. Department of Justice
717 N. Hardwood, Suite 400
Dallas, Texas 75201
(214) 880-9721 (Main)
(214) 880-9741 (Fax)
EILEEN J. O'CONNOR
Assistant Attorney General

DAVID D. GUSTAFSON
Chief, Court of Fed. Claims Section
CYNTHIA E. MESSERSMITH
CHRISTOPHER R. EGAN
DAVID R. HOUSE
Of Counsel

.