**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **J&J FERNANDEZ VENTURES, LP,** | § | |
| **JMJV MANAGEMENT CORP.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **NOS. 06-27T and** |
| **v.** | § | |
| | § | **05-26T (Judge Baskir)** |
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Defendant.** | § | |

**<u>JOINT STATUS REPORT ON 1999 FPAA</u>**

The parties jointly file the following status report on a 1999 Notice of Final Partnership Administrative Adjustment ("1999 FPAA") issued to the plaintiffs.

## I. EFFECT ON CONSOLIDATION

The 1999 FPAA should have no effect on the consolidation of Case Nos. 05-26T and 06-27T. Plaintiffs have made no final venue determination but do anticipate filing a complaint challenging the 1999 FPAA on or before July 12, 2006. If Plaintiffs file suit in the Court of Federal Claims, the parties anticipate asking the Court to consolidate the 1999 case with Case Nos. 05-26T and 06-27T. The 1999 FPAA addresses many of the same transactions addressed by the FPAAs issued in Case Nos. 05-26T (2000 Tax Year) and 06-27T (2001-2003 Tax Years).

## II. EFFECT ON PENDING CROSS-MOTIONS FOR SUMMARY JUDGMENT

### A. United States' Position

The Court does not have to consider the 1999 FPAA to hold that the applicable limitations periods for assessing taxes owed by the partners (Mr. and Mrs. Fernandez) are open. As explained in the brief supporting our cross motion for summary judgment, the Court may – and should – determine that the 2000-2003 FPAAs suspended the limitations periods for assessing 2000-2003 tax attributable to 2000-2003 partnership gains.

Nevertheless, the 1999 FPAA was issued by the IRS as a protective, or alternative, measure to ensure that the merits of this tax shelter will be subject to review by this Court, and/or whatever other court Plaintiffs may decide to file suit challenging the 1999 FPAA. We are compelled to observe at this point that the mere fact Plaintiffs are even considering filing this third suit in a different court, with all of the needless waste of judicial resources that such a filing would entail, is most unfortunate. Even if this Court holds that the limitations period for assessing tax attributable to the 2000-2003 partnership gains pursuant to the 2000 and 2001-2003 FPAAs has expired, the 1999 FPAA preserves the limitations period for assessing the partners with tax attributable to two alternative items: (1) gain from the

Family Trust's alleged 1999 sale of its partnership interest to the Descendants' Trusts; and (2) gain from partnership distributions to the partners in excess of the partners' basis in the partnership.

There are four possible scenarios with respect to the resolution of the limitations issues presented by Fernandez's Son of BOSS tax shelter transaction:

1. This Court will agree with the United States that the 2000 and 2001-2003 FPAAs are timely and may adjust the tax basis the J & J partnership claims in the Invitrogen stock that was sold in 2000 through 2003 (the "inside basis"). This Court will further agree with the United States that the purported transfer of a combined 51 percent partnership interest from the Family Trust to the Descendants' trusts was not in fact a sale and no termination of the partnership occurred in 1999. Accordingly, the entire amount of the gain on the sale of the Invitrogen stock will be attributable to the partnership in the years it was sold.
2. This Court will agree with the United States that the 2000 and 2001-2003 FPAAs are timely and may adjust the inside basis of J & J claimed when the Invitrogen stock was sold, but the Court will disagree and determine that a sale/termination occurred in 1999.

Under this scenario, the 2000 and 2001-2003 FPAAs would still adjust the inside basis the partnership claimed when the stock was sold, but the gain the partnership must recognize would be limited to the 49 percent applicable to the 49 percent partnership interest retained by the Family Trust. However, this Court (or some other court) would agree with the United States that the 1999 FPAA permits the IRS to make an adjustment that would require the Family Trust to recognize gain on its sale of the 51 percent partnership interest to the Descendants' trusts. Since the proceeds from this alleged sale were allegedly received as installments paid during 2000-2004, the Family Trust would likely have to recognize its gain during 2000-2004. These installment payments were funded by the Descendants' trusts share of the proceeds from the sale of the Invitrogen stock. Ultimately, none of the proceeds escapes taxation.

3. This Court will agree with the Plaintiffs that the 2000 and 2001-2003 FPAAs were not timely and may not be used to adjust the partnership's inside basis when the Invitrogen stock was sold. However, this Court (or some other court) would agree with the United States that the 1999 FPAA was timely and permits the IRS to make adjustments in the 1999 year that result in the individual

partners having a drastically reduced basis ("outside basis") in their partnership interests. This reduced basis in the partnership would trigger gains in later years when the partners receive large cash distributions of the sales proceeds generated by the stock sales. See 26 U.S.C. § 731. As a result, the partners would still be compelled to recognize the same substantial taxable gains they would have received in Scenario No. 1. This Court (or some other court) would further agree with the United States that there was no valid sale/termination event in 1999 as in Scenario No. 1.

4. This Court (or some other court) would agree that the 1999 FPAA was timely and may be used to require the partners' outside basis to be adjusted as described in Scenario No. 3, but it would disagree about the sale/termination event. In that event, the 1999 FPAA could be used to make adjustments requiring the partnership to recognize gain from the installment payments it received in the years 2000 through 2004 in the same manner as described in Scenario No. 2.

The United States contends that the 2000 and 2001-2003 FPAAs were timely and that this case should proceed as described in Scenario No. 1. In that event, consideration of the 1999 FPAA will be unnecessary. If

the Court should disagree, any of the three other scenarios would require consideration of 1999 FPAA. Although Plaintiffs are evidently contemplating running off to some other court to challenge the 1999 FPAA, note that under Scenario No. 2, this Court could still determine that the 2000 and 2001-2003 FPAAs controlled as to the 49 percent of the gains required to be recognized when the Invitrogen stock was sold. Then, this Court or some other court would need to decide the issues related to the 1999 FPAA. The intervention of two courts in Scenario No. 2 dramatically illustrates the abusive nature of the Plaintiffs' possible decision to file suit challenging the 1999 FPAA elsewhere. Under Scenarios 3 and 4, a different court could make all of the decisions necessary to resolve those issues, but that different court would still be required to invest the time this Court has already spent studying the nature of the transaction, the events involved, and the legal issues they present. Note: This other, second court would only be called upon to resolve issues related to the 1999 FPAA after this Court has spent the time to resolve the disputes now before it related to the 2000 and 2001-2003 FPAAs.

Determining whether the 1999 FPAA suspends the period for assessing tax from the above alternatives, would require the court to

examine two limitations issues not briefed for the pending cross-motions for summary judgment:

a. Whether 26 U.S.C. § 6501(a) provides the general limitations period for tax attributable to partnership items. See Rhone-Poulenc Surfactants and Specialties, L.P. v. Comm'r, 114 T.C. 533 (2000). (holding that section 6501(a) provides the general limitations period, while section 6229(a) provides a minimum period); and

b. Whether the six-year limitations period provided by 26 U.S.C. § 6501(e) applies to J&J's partners' underreporting of income during 2000-2001.

The Court would need to determine whether section 6501(a) provides the general limitations period because the section 6229(a) period admittedly expired before the IRS issued the 1999 FPAA; the 1999 FPAA was issued over three years after J&J filed its 1999 partnership return (Form 1065). Thus, the United States cannot rely upon the section 6229(a) period to argue that the 1999 FPAA suspended the applicable assessment limitations periods before they expired.

The United States can rely, however, upon the section 6501(a) and 6501(e) periods. Both the three-year and six-year statutes are involved because the 1999 FPAA was issued more than three but less than six

years after Joseph and Joan Fernandez filed their individual income tax returns for 2000 and 2001 (Form 1040) invoking section 6501(e), but it was issued within three years of their filing their returns for 2002, 2003, and 2004 invoking section 6501(a). Under the section 6501(e) period, the Court would need to determine whether J&J's partners substantially omitted their 2000 and 2001 income. If they did, six-year assessment limitations periods apply to the 2000 and 2001 tax years, and issuing the 1999 FPAA suspended those periods before they expired.

B. Plaintiffs' Position

Plaintiffs believe that the 1999 FPAA has no effect on the pending cross-motions for summary judgment. Although Plaintiffs have not yet completely analyzed the legal and factual issues presented by the 1999 FPAA, it is clear that the 1999 FPAA poses related but distinct issues from those presented in the pending cross-motions for summary judgment. In short, each of the three FPAAs stands alone and represents separate adjustments for separate years. This court must either sustain or adjust the 2000 FPAA (case no. 05-26T, hereinafter "Fernandez I") and the 2001-03 FPAA (case no. 06-27T, hereinafter "Fernandez II"). Likewise, this or

another court will have to sustain or adjust the 1999 FPAA once a complaint is filed ("Fernandez III").

As the Court is aware, Fernandez I involves the Internal Revenue Service's ("IRS") indirect challenge to 1999 partnership items through the issuance of the 2000 FPAA. The core transaction that the IRS challenges – the contribution of an open T-Bill short transaction to the First J&J – occurred in 1999. This transaction coupled with the termination of the First J&J as a result of the 1999 sale of fifty-one percent (51%) of the partnership interests to certain descendants trusts, resulted in the basis of Invitrogen stock being enhanced during 1999. None of this stock was sold by the Second J&J until 2000 through 2003.

In Fernandez I, the IRS improperly challenges the basis of the stock sold in 2000. In Fernandez II, the IRS improperly challenges the basis of the stock sold during 2001 and 2003. The IRS issued these indirect challenges because it failed to adjust the 1999 partnership items within the three year statute of limitations – regardless of whether that three years is measured from the date the partnership's or individual partners' 1999 returns were filed. Plaintiff's challenge the 2000 FPAA in Fernandez I because the FPAA was issued to the wrong partnership and for the wrong year. Fernandez II challenges the 2001-03 FPAA on the same basis.

In Fernandez III, the IRS essentially admits that it got it wrong in Fernandez I and II, and directly challenges J&J Fernandez's 1999 partnership items. Because the three year statute of limitations has expired, the government is relying on the six year statute of limitations for omission of more than twenty-five percent (25%) of gross income. Further, it appears that the IRS is relying on an alleged omission of gross income at the individual partner rather than partnership level.

This presents the issue of whether the statute of limitations for adjusting partnership items is measured from the date the partnership return is filed or from the date the partners file their returns. *See Ad Global Fund, L.L.C. v. United States,* 67 Fed. Cl. 657 (2005) (Judge Miller) *interlocutory appeal pending, AD Global Fund, LLC v. United States of America, No.* 06-5046, (Fed. Cir. filed January 9, 2006)*; Grapevine Imports, Ltd., v. United States,* No. 1:05-CV-296 (Fed. Cl. filed March 11, 2005) (Judge Allegra) (cross motions for summary judgment pending and orally argued on April 13, 2006). Further, Fernandez III may involve the IRS's attempt to effectively overturn the Supreme Court's decision regarding the six-year statute of limitations in *The Colony, Inc. v. United States,* 357 U.S. 28 (1958). A similar issue is being decided by Judge Allegra in *Grapevine Imports,Ltd.*.

Finally, the government appears to be taking the position that the statue of limitations for issuing the 1999 FPAA was open because it was issued within six or three years of the date that the Second J&J's partners filed their individual tax returns for 2000-01 and 2002-03, respectively. Thus, the 1999 FPAA presents the same issue as is being litigated in *Bay Way Holdings, et al v. Commissioner,* No. 5534-05 (Tax Court, filed March 22, 2005) (motions for summary judgment pending). That is, whether the IRS may issue an FPAA for 1999 partnership items when both the section 6501 and 6229 statutes of limitations have expired for 1999 but later section 6501 statute of limitations for the partners in a different partnership remain open. Although these issues are very interesting, they involve the 1999 FPAA and are distinct from the issues posed in Fernandez I and II. Each FPAA stands alone. Accordingly, Plaintiff's believe that the 1999 FPAA has no effect on the pending cross-motions for summary judgment.

Respectfully submitted,

**FOR PLAINTIFFS**

/s/*Christopher R. Egan* w/ permission for
M. Todd Welty
Josh O. Ungerman

Meadows, Owens, Collier, Reed,
Cousins & Blau, L.L.P.
901 Main Street
Suite 3700
Dallas, TX 75202
(214) 744-3700 Telephone
(214) 747-3732 Facsimile
twelty@meadowsowens.com
jungerman@meadowsowens.com

Date Signed: 6-2-2006

**FOR DEFENDANT**

/s/ *Christopher R. Egan* for
GROVER HARTT, III
Attorney of Record
Tax Division
U.S. Department of Justice
717 N. Hardwood, Suite 400
Dallas, Texas 75201
(214) 880-9721 (Main)
(214) 880-9741 (Fax)
EILEEN J. O'CONNOR
Assistant Attorney General
DAVID D. GUSTAFSON
Chief, Ct. of Fed. Claims Section
CYNTHIA E. MESSERSMITH
CHRISTOPHER R. EGAN
DAVID R. HOUSE
Of Counsel

Date Signed: 6-2-2006